19-1894 Wheeling & Lake Erie Railway Co. v. Robert J. Keach Thank you. Thanks. Good morning, your honors. My name is Daniel Rosenthal. I just think the clock isn't running yet. I represent the appellate of the Wheeling & Lake Erie Railway Company and I will be addressing the issue of whether claims of the debtor, the Montreal, Maine & Atlantic Railway, against the shipper of the crude oil cargo on a train that derailed and exploded in Lac-Megantic, Quebec were Wheeling's collateral. The Bankruptcy Court erred as a matter of law in ruling that MMA's claims against the shipper, based on mislabeling of the crude oil cargo, were not Wheeling's collateral. The District Court, on the other hand, got that issue right and we would commend the court to that opinion that is in the addendum. Was the District Court also correct when it went on to say that no matter how that issue is decided, if the case is decided, if the defendant loses, excuse me, if Wheeling loses on what you call the second issue, we don't even have to deal with the issue of whether or not this is a security. Well, your honor, the... That's a yes or no question. I want to know whether, if you don't prevail on the second issue, that we have to decide what seems to be a highly ramified issue that you're about to argue. The District Court was correct in its decision that if the collateral had no value, or Wheeling failed to prove that the collateral had any value, that it was not... I'm trying to give you the quickest answer I can, your honor. It is true that if the District Court was correct on the valuation issue, that the other issue need not be reached. That's exactly what I want to know. And Mr. Marcus will be addressing that other issue. Just to say more about the issue of whether this was collateral, the bankruptcy court's mistake was in really disregarding what the United States Supreme Court said in 1982 in the Southern Pacific v. Commercial Metals case, in which that court spoke clearly about the fact that a bill of lading is a contract between the shipper consigner and the carrier, whose terms and conditions bind all carriers on the route. And instead, the bankruptcy court traveled back a hundred years and reviewed a number of old cases. There was really no reason to go back in time and recreate the wheel when the Supreme Court had been clear on this. Federal Law 49 CFR Part 1035 mandates terms and conditions in the uniform bill of lading become the party's contract or part of the party's contract unless the parties enter into what's called a private transportation contract under Section 10709, which is undisputed, but it did not happen here. And so the uniform bill of lading in Section 6 of Appendix B has a clear indemnification provision that would apply here. And in addition to what federal law does, these parties had a bill of lading in which a bill of lading that the shipper created chose MMA as a connected carrier, agreed to accept Canadian Pacific's terms and conditions that there's no dispute, those consisted of CP's tariffs, which also have indemnification provisions, also have labeling requirements. And so we submit and the district court found that there was a contract, these claims were cases are really inapposite here. Those have to do with fixing the liability on carriers for purposes of facilitating the purposes of the Carmack Amendment. They really have nothing to do with this case. The Norfolk Southern versus Kirby case that the estate representative talks about similarly is really inapposite here. And so unless the court has any further questions on this issue, we submit that bankruptcy court got it wrong and I'll finish my talk here. Thank you. Good morning. My name is George Marcus, counsel for Wheeling and Lake Erie Railway Company. I'd like to reserve three minutes of my time for rebuttal, if the court would permit. Yes. Thank you. So we believe that the district court got it right and that is that the derailment claims were in fact collateral. However, the bankruptcy court and the district court erred in determining that that collateral had no value or that Wheeling had failed to prove it. Mr. Marcus, before you start, I understand there's a dispute here as to what value means and how we should look at the term value. But no matter how we look at it, it seems to me that your client has the burden of proof of showing value. Do you agree with that? Yes, I agree with that. Okay. As a secured creditor, valuation is governed by section 506A of the bankruptcy code which the state representative is that, again, I am arguing under the assumption that the court rules that the derailment claims were in fact collateral. Here the position of the state representative is, well, I get to use that collateral and I get to use it to effectuate a very favorable settlement, one that the bankruptcy court determined was essential and beneficial to the state. And I get to use the collateral for free. Now, why is that? And how can that be squared with the requirement of section... Can I please go back to Judge Salyer's comment? Yes. Since you had the burden of proof, what was the evidence that you put in that your collateral had value at least as to the second prong of the bankruptcy court ruling that you had not established value? The evidence was consistent of the following. The fact that, in fact, the derailment claims were traded for three items of consideration for the estate. And those three items were $119 of cash made available to satisfy creditors of the bankruptcy estate under the bankruptcy estate's own plan of reorganization. Secondly, that, in addition, the shipper released its CARMAC claims against the estate, claims that were described as being in the hundreds of millions of dollars. Third, in exchange for the derailment claims, the shipper assigned to the bankruptcy estate all of its CARMAC claims against other parties other than the bankruptcy estate. And that's not all. Well, so far you've told me that there may be evidence from which an inference could be drawn that there was some value, but you haven't told me anything about what that value actually was. Yes, and I was getting to that next. $10 million. At least $10 million. Now, keep in mind that the Wheeling Secure claim is stipulated to be $3.2 million of principal plus interest in other charges. There was a further stipulation in the court, and the stipulation was that if the breach of contract claims were prosecuted by the trustee, a damage recovery of not less than $10 million after taking into account expenses would be expected. Well, the bankruptcy judge did not read the stipulation in the way that you are reading it. So does your argument depend on an assertion that the bankruptcy judge committed an error of law in its understanding of the stipulation? Yes, Your Honor, it was an error of law, because where the bankruptcy court went off the rails, if I may use that metaphor in this case, is that the bankruptcy judge accepted the argument that, well, okay, you have these claims, and maybe the claims would have brought you $10 million in recovery. However, there were counterclaims, and the judge accepted the testimony of the estate representative, another error to accept that testimony, but accepted the testimony to say, well, the counterclaims are at least equal to those claims, and therefore those claims had no value. That was a legal error, and it was a legal error because the for the purpose for which they were used. Let me elaborate. This is important. If a third party were asked, do you want to buy these derailment claims, the third party would rightly say, I might, but I'm not going to pay anything for them, because the other side will assert counterclaims and defeat the claims, and therefore all the money I paid would go down the drain. That's a proper analysis, but that was not the situation that the court was confronted with in this case, and Section 506A2 directs the court to review the circumstances of this case. In this case, let's take it as a given that these claims were traded for elimination of the Comack Amendment counterclaims. Well, even the elimination of those counterclaims brought substantial value to this estate. It didn't make the claims worthless. It brought substantial value. Mr. Marcus, your answer to Judge Lynch, that the principal evidence in support of your claim of value is the stipulation itself, is troubling to me, because as I read the stipulation, the stipulation doesn't talk in terms of value. It talks in terms of damages, and every lawyer knows as an elementary proposition that the potential for damages and the value of a claim are two things, and in some cases, two vastly different things. Yes, Your Honor. Again, in a situation where someone is evaluating a claim, it's one thing to have a claim and have a claim for damages. It's another thing to have a recovery. However, however, the objection raised to damages being tantamount to the value of a claim, the objection raised in this case was that, oh, well, they were counterclaims. That would have prevented a monopoly. Well, that wasn't the only objection, because the finding, as I read it, of the courts below, at least of the bankruptcy court, is that A, you hadn't proved the value of your claim, and that in all events, your claims had no net economic value. Yes, Your Honor, and I submit that the reasons that the court made those determinations were really twofold. One is that, well, they're counterclaims, and that was a mistake, because counterclaims, the dismissal of a counterclaim has tremendous value to a bankruptcy estate when there aren't enough assets to go around to all creditors. So you either improve the lot of creditors by increasing assets or reducing claims. Oh, I understand that. Right. Now, that argument may have some force on the net economic value. Right. And it seems to me, on the finding, that you have not proved value. We don't even get to the question of the counterclaims. I believe, Your Honor, the other grounds for the bankruptcy court's action was, A, the counterclaim issue, there's no net settlement value. I think that was the phraseology, no net settlement value. And then the other argument was tracing. Yeah. And the tracing argument was, well, okay, there are a lot of parties to the settlement. Many, many parties put assets into a settlement fund and took assets out. Tracing is just another way of saying you want to let your burden of proof. Yes, but it's an incorrect legal standard to apply. Yeah. And it is, Your Honor, because it's not the obligation of a secured creditor whose collateral is used to say, oh, I can connect that use of collateral to buying an asset or making money or any of the sort. And ironically, the bankruptcy court got it right as far as reading his accounts receivable go. But I read the bankruptcy court as meaning that by tracing, the court meant that you can't ascribe value to your claim because you presented no evidence from which the court could trace that claim to any specific component of the settlement to show that anything particular was put into the pot on the other side in recognition of these claims. Everyone knows that when a defendant or someone in the position of a defendant wishes to enter into a global settlement of claims, they want all claims settled whether or not those claims have value. So the mere fact that there was a settlement and the settlement involved substantial numbers doesn't prove that your particular claim had value. That's what I thought the concern of the courts below was, or one of their concerns. Yes, I think the court articulated it right. The collateral was taken and put into a settlement pot, and you can't figure out where it went from there and what was in return for that. And so why on that record isn't the court right to say, and in that situation, since we don't know if no value or some value or a lot of value is assignable to these particular claims, the secured creditor has not met its burden of proof. The reason is that Section 363E, which requires adequate protection, basically says once you take the secured creditor's collateral off the shelf, you've got to pay for it. And it doesn't matter what you do with it. No, no, no. Once you take it off the shelf, even if it is valueless, it's got to have some value, and you have the burden of proving that it has some value. And the value is proven by the other elements that I discussed. All I'm saying is to address the point of the commingling of funds and the inability to segregate and trace was that if a debtor takes collateral and puts it on a truck and drives it into the harbor, they're going to pay for the collateral. If a debtor uses machinery and equipment and it depreciates, you have to pay for collateral, even though you can't possibly connect depreciation of a truck to acquisition of any asset. That's true, but if the collateral is equity in a company that went bankrupt and dissolved 50 years ago with no assets, there's no value and therefore no recovery, despite the fact that it was collateral. Yes, of course. Mr. Marcus, thank you. We're going to need to move on. All right, there you are. Adam Prescott, on behalf of the appellee. This is a straightforward appeal, clear error review. You are an eternal optimist. This appeal is many things, but not straightforward. I respectfully disagree, Your Honor. I think it is straightforward. Can you go directly to what the appellants have described as the second issue? You mean the evidentiary issue, Your Honor? I would disagree. I believe it's the first issue and I think it's been conceded as the only issue for us to decide. If you want to argue that, go ahead. The appellant's evidence at the trial was a stipulation regarding net economic damages. As Your Honor already alluded to, net economic damages is not the same as the value of a claim. Under 506A, the bankruptcy court applied the correct law to look at how the claim, how the collateral, to the extent it exists, and we can talk about that, why it did not, how it was used. Wheeling wants to set that up as some type of bilateral exchange. You had $10 million and you got $110 million in return. That is absolutely not what happened here. It was stipulated to before trial. It's in the bankruptcy court's factual findings. This was a global settlement. It involved claims certainly of MMA as the debtor, but it included government claims. It included private plaintiff's claims. All of those claims were packaged together and they were released in exchange for $110 million. There's no evidence in the record that any portion of the $110 million was allocated or exchanged for release of these non-tort claims. In fact, the estate representative testified at trial that the parties did not credit or allocate any portion of the settlement proceeds to the claims because of several different reasons, including the fact that there were significant combat counterclaims, hundreds of millions of dollars in combat counterclaims. Those are the findings of the bankruptcy court that are subject to clear error review. We have the settlement and how it was set up. Just looking at the claims itself, I think it's frankly common sense that net economic damages is not the same as the value of a claim. For example, we are here today and one of the issues is whether or not, as a matter of law, these claims exist. Did MMA have contract or regulatory or statutory claims against the sugar? That's one of the issues on appeal. The very fact that this appeal and that issue is going to the First Circuit tells me there's some problems with those claims. The collateral may not even exist in the first place. That has to diminish the value of those claims to something other than net economic damages. I don't know what the number is. It wasn't the appellee, the state person's burden to prove that value at trial. It was the appellant's burden. Counsel, our focus has been on the proof of economic value. I take your point that the stipulation about damages really is a different matter. But, you know, circuit courts make law, and so what are the legal principles that you think are important in urging us to affirm on that narrow issue of value? The legal principle on the issue of value, I think, is a simple application of 506A and the burden under 363P when dealing with adequate protection. This is what bankruptcy courts do all the time. It's a simple matter of valuation. I don't believe there are any legal issues that need to be resolved here. The bankruptcy court clearly laid out. It looked to the purpose and use of the collateral. That was the release in the global exchange. It then tried to determine what was the value of the collateral as it was used. It found there was no evidence of that. I don't think we need to reach any novel issues of law. So suppose your opponent had put on an expert that said, I would have valued the collateral at X, and even though I didn't participate in the settlement, would that have been enough? I think, Your Honor, that would certainly be more than what was done. Well, if the bankruptcy court sitting as the trial court and the fact finder here heard that evidence, heard the evidence from the estate representative testifying, looked at the settlement agreement and the fact of how the proceeds were distributed, which in fact none of the proceeds actually went to the estate. They went to the victims of the derailment. I think it certainly would be within the bankruptcy court's discretion as the fact finder to weigh the different evidence and the expert testimony and the other facts and come out on the other side. And let me add, we haven't talked about the counterclaims. Well, one worries about collusion, right? One worries about reliance simply on evidence of what happened in settlement negotiations. But your answer did not solely rely on that. Our answer does not solely rely on the fact that there was no allocation or what happened in the settlement. That was the testimony that came in. Counsel, if the focus here is on the issue of value, does it matter for purposes of deciding this appeal whether we have to view the standard as one of adequate protection or against some plan confirmation standard? Ultimately, Your Honor, I don't think it matters. I think we end up in the same place. I think the plan here, I think, is the applicable standard. That was the negotiated treatment. We've set a case law on why adequate protection does not apply after plan confirmation. I know that. But as you know, the appellant has a different view of that issue. And again, what I'm really asking is if our focus is on value and we conclude that this case turns on the proof or failure to prove value, whether we really have to resolve this other conflict about adequate protection versus plan confirmation. You don't need to resolve that, Your Honor. I think we effectively have conceded in our brief that these are the same standard. The burden is the same. It remains on the appellant here. I think the bankruptcy court obviously disagreed with us on that point. I don't think it has any relevance for deciding this appeal today. Let me return briefly just to the question. I'm sorry. Is your answer they're the same standard or it doesn't matter even if there are slight differences because either standard would be satisfied on the evidence? The wording is different, Your Honor, but I believe they are the same standard in how they're applied. And I think under either one of those, the appellant has a burden and failed to meet that burden. Briefly, on the issue of counterclaims, again, the bankruptcy court made specific findings about the existence of CARMAC counterclaims that the shipper would have and that not only did Wheeling fail to prove the value of the claim, just the face value, setting aside counterclaims, but it also relied on factual testimony to determine applying the CARMAC law that the shipper would have significant millions of dollars, hundreds of millions of dollars of counterclaims. That's based on the testimony from the estate representative. It's factual testimony about MMA's conduct. There's no reliance on the expert testimony. What was the figure that the bankruptcy court found? Did it say hundreds of millions? I was doing a calculation. I came up with potential for $2.4 billion. Am I out of the ballpark? I think that the $2.4 billion, Your Honor, referred to all the claims that were settled in the global settlement. I don't think all of that would have been subject to the shipper's CARMAC counterclaims, but I think as a matter of law, and we cite the cases in our brief, for example, settlement payments are recoverable under CARMAC. There's no dispute in the record that the shipper paid $110 million to settle claims arising from the derailment. $110 million is significantly greater, obviously, than even the $10 million here. And just briefly moving on to the legal issue, which I think we obviously don't need to get to, but there's a fundamental misreading of this commercial metals case, and to treat it as some type of new proclamation of law from the Supreme Court just doesn't add up. First, commercial metals cites Leatherwood, which in turn discusses and cites Ward. So it wasn't a fool's errand for the bankruptcy court to go back and look at the prior cases. It was exactly what commercial metals would have dictated and what judges usually do in their citations. The commercial metals case says nothing about contract claims under a bill of lading and whether those claims exist. It was a matter of whether a connecting carrier can recover, collect on freight charges from a shipper. And the issue is whether or not the shipper had executed a non-recourse provision so that the claim could go after the consigning, not the consignor. The shipper didn't do that in this case, and the court found under the regulatory scheme that the carrier's failure to perform the necessary credit check did not waive the carrier's ability to collect on the freight charges. It's a regulatory issue. It is not a claim by a carrier against a shipper. And all the court does when it refers to the contract claims and it refers to Leatherwood citing Ward is that the court is simply saying that the shipper, as the party entering into the bill of lading, had the opportunity to select the option to limit its liability on the freight charges and pass that liability down the road. The shipper didn't do that. Now, had the shipper done that, that limitation would have been binding on connecting carriers. It's binding based on the same exact reasons discussed in Ward and Leatherwood and Galveston. It's the agency principle. It's not because the connecting carriers are parties to the contracts. And we haven't gotten into all of the different citations in our brief regarding connecting carriers and being parties to a contract, but I would just refer the court obviously to our citations but also to the bankruptcy court's factual findings on this issue. The bankruptcy court had the actual bill of lading in front of it. It had testimony through depositions regarding how the bill of lading was formed. It looked at the bill of lading and determined that MMA was on the group designation. It was not a party to the formation of the bill of lading. It also looked at the bill of lading in the language regarding incorporation of tariffs. And the bankruptcy court found, again, based on the evidence in front of it, that the tariffs were not incorporated. Those are all factual findings from the bankruptcy court. Now, certainly there's legal issues that overlay with it, but I think it's important to keep in mind as we talk about evidence on the evaluation side, there's also other findings on the legal side that I think deserve deference and that the bankruptcy court's entitled to. Unless there's any other questions, I'll see you the rest of my time. Thank you. I'd just like to pick up where I left off. If you were to find a hold that the fact that counterclaims vitiate the value of the property used to release them does not permit an inference of no value in that property, if the court were also to hold that the fact that if a debtor uses property of a secured creditor but cannot trace the outcome to the property used, if the court were to determine that that, too, is an error of law for the bankruptcy court to have made that inference, then what you're presented with, I believe, is a stipulation that values a cause of action in the conventional way causes of action are valued. Now, I don't see how you read the stipulation as valuing the cause of action at all. I read it that way because apart from counterclaims, apart from tracing, when you have to know, well, what is the value of this claim? But the stipulation doesn't speak in terms of value. It speaks in terms of damages. Yes, but that is the value of a claim. Damages aren't the value of a claim. I mean, what's the authority for that proposition? If you look in the dictionary, damages have a different meaning than the value of a claim. If you think in terms of common practice, damages and the value of a claim are a far different thing. When you have a garden-variety lawsuit, you don't just total up your damages and present the bill to the other side. You also have considerations like can you prove liability? Is the party you're going to sue likely to be in a position to pay? Are there any pockets deep enough? There are a dozen considerations that any trial lawyer will tell you differentiate damages from the value of a claim. And what about this stipulation makes the use of the word damages unique? Well, the stipulation has to be considered in the context of the other evidence at the hearing. True, if I'm evaluating a claim, if a lawyer is evaluating a claim, there are all kinds of questions. Can the defendant pay it? What are the damages? Can the defendant pay it? Are there counterclaims? All those are relevant questions. But now if you look in this case where you have claims that were traded in a trade that the bankruptcy court says this was a very, very good trade. You say, well, what is it that was traded? What was on the traded end? Well, on the traded end was not the defenses of the derailment claims. On the traded end, what were traded were the prima facie derailment claims. And to my knowledge, the only way to determine the prima facie value of a claim is, well, what would you expect to recover in litigation? And that was the stipulation. There was no need to speculate to the defendant's ability to pay. There's no need to speculate to the fact that there were counterclaims and not counterclaims. None of that was necessary. The question for the court, I believe, is under adequate protection or the plan, either one, if the debtor took an asset and used it for its advantage, how do you get your arms around what that asset was worth without getting into the quagmire of trying to allocate settlement consideration? Well, counsel, you know, we see a whole lot of court cases, and it comes as a surprise to me that a plaintiff's damages claim should be taken as the prima facie value of what the claim is actually worth. And yes, Your Honor, your surprise is entirely justified. Well, yes, but we're dealing with precise language, which is Judge Seligman says does not use the term value, nor does it use the term prima facie value. Yes, Your Honor, but the challenge in this case is to value a chosen action, a cause of action, in an unusual circumstance. And I submit to you that when the court looks at tort cases or breach of contract cases in the ordinary course, the considerations raised by the court are, of course, important and essential. But here the matter is teed up in a different context, and that is using a creditor's collateral to make a trade that the court said is highly advantageous, and the trade resulted in $110 million and a release of all claims and an assignment of claims. So you don't have to get to the issues of, well, the defendant is good for or not good for. You don't have to get to those issues. Okay, counsel, we got it. Thank you.